IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CARRIE P. CLARK,                           :

     Plaintiff,                          :

vs.                                        :        CA 08-0454-C

MICHAEL J. ASTRUE,                         :
Commissioner of Social Security,
                                           :
     Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff brings this action pursuant to 42 U.S.C. §1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Docs. 18 & 19 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the

parties' arguments at the March 23, 2009 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to mental retardation, dysthymic disorder, personality disorder, and obesity.  The Administrative Law Judge (ALJ) made the following relevant findings:

> **2.    The claimant has the following severe impairment[s]: dysthymic disorder and personality disorder (20 CFR 416.920(c)).**
>
> .        .        .
>
> She appeared to be functioning within the borderline to mentally retarded range of intellectual ability. Dr. Tocci diagnosed the claimant with depressive disorder, NOS and developmental disorder, NOS.
>
> .        .        .
>
> **3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

---

[1]    Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 18 & 19 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Taking into account the record as a whole, the undersigned finds that the claimant does not exhibit marked limitations in social or personal functioning, nor in concentration, persistence or pace. She has not had three or more episodes of decompensation in a work-like setting.

The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 or 12.08. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. In social functioning and concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has experienced no episodes of decompensation. Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

.        .        .

**4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to unskilled simple, routine, repetitive jobs.**

3

.       .       .

The undersigned accords little weight to the opinion of the claimant's treating psychiatrist, Dr. Baltz (Exhibit 10F) since his opinion is inconsistent with his own progress notes in Exhibit 9F and with Dr. Pineda's progress notes in Exhibit 8F. In reaching the above conclusions, the undersigned has carefully considered the guidelines in Social Security Ruling SSR 96-6p.

In accordance with the above referenced ruling, the residual functional capacity assessment completed by the State Agency, and the findings of fact made by the State Agency and other program physicians regarding the nature and severity of the claimant's impairments have been considered by the undersigned as expert medical opinions of nonexamining sources. The medical source statements of the State Agency review physicians, in particular, are generally consistent with substantial evidence in the case record. The undersigned accords them significant weight.

**5.   The claimant is capable of performing past relevant work as a bagger as she performed it and as generally performed in the national economy: bagger–Dictionary of Occupational Titles # 375.263-018, medium exertion, unskilled work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).**

**6.   The claimant has not been under a disability, as defined in the Social Security Act, since May 10, 2005 (20 CFR 416.920(f)), the date the application was filed.**

(Tr. 22, 23-24, 24 & 26 (emphasis in original))  The Appeals Council affirmed

the ALJ's decision (Tr. 6-9) and thus, the hearing decision became the final

decision of the Commissioner of Social Security.

4

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past work as a bagger, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must

view the record as a whole, taking into account evidence favorable as well as

unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d

129, 131 (11th Cir. 1986).

     Although the claimant bears the burden of demonstrating the inability

to return to her past relevant work, the Commissioner of Social Security has

an obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d

578, 581 (11th Cir. 1987) (citations omitted). Social Security Ruling 82-61

recognizes three possible tests for determining whether or not a claimant

retains the capacity to perform her past relevant work.  They are as follows:

> 1.    Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.[2]

> 2.    Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.

> 3.    Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers

---

[2]    As recognized in the ruling, use of this test is likely to be "fallacious and insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge."

throughout the national economy.[3]

Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61.

In this case, the ALJ relied upon a combination of tests two and three above to determine that Clark can perform her past work as a bagger. (*See* Tr. 26 ("**The claimant is capable of performing past relevant work as a bagger as she performed it and as generally performed in the national economy: bagger–Dictionary of Occupational Titles # 375.263-018, medium exertion, unskilled work**."))

Section 404.1520(e) of the Commissioner's regulations requires a review and consideration of a plaintiff's residual functional capacity and the physical and mental demands of the past work before a determination can be made that the plaintiff can perform her past relevant work. Social Security Ruling 82-62 provides that evaluation under § 404.1520(e) "requires careful

---

[3]     The Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy.

consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of . . . her  PRW to <u>determine whether the individual can still do that work.</u>"  *See also Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (to support a conclusion that a claimant "is able to return to her past work, the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments").

> The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled."
>
> .        .        .
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision.  Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.
>
> Sufficient documentation will be obtained to support the decision.  Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work). Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations.  Detailed information about strength, endurance, manipulative ability, mental demands

and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source.  Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

SSR 82-62.  In finding that a claimant has the capacity to perform a past relevant job, the decision of the Commissioner must contain among the findings, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation. *Id.*

In this case, the plaintiff contends that the ALJ committed the following errors: (1) he applied improper legal standards in determining that she can perform her past work as a bagger; (2) he erred in failing to find her disabled based upon the medical opinions expressed by Drs. Baltz and Tocci; and (3) he erred in failing to find her presumptively disabled under 12.05C. Because the Court finds that the ALJ erred with respect to the first and third issues raised by the plaintiff, it is not necessary for the Court to consider the other error raised by plaintiff. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th

Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

**A.     Whether Plaintiff's Past Employment as a Bagger Constitutes Past Relevant Work**.  Plaintiff contends that the ALJ erred in determining that she can perform her past work as a bagger. The ALJ engaged in the following relevant discussion regarding plaintiff's past employment as a bagger and the meanings of substantial gainful activity and past relevant work: "At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. 'Substantial work activity' is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). 'Gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. . . .  The term past

10

relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). . . .**The claimant is capable of performing past relevant work as a bagger as she performed it and as generally performed in the national economy: bagger–Dictionary of Occupational Titles # 375.263-018, medium exertion, unskilled work**." (Tr. 21, 21-22 & 26 (emphasis in original))

As indicated in the ALJ's decision, the regulations define past relevant work as "work that [a claimant has] done within the past 15 years, that was **substantial gainful activity**, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1) (2008) (emphasis supplied). Substantial work activity, in turn, is defined as "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis[.]" 20 C.F.R. § 416.972. In general, in evaluating work activity for substantial gainful activity purposes, the Commissioner's primary consideration is the earnings the individual claimant derives from work activity. 20 C.F.R. § 416.974(a)(1). "Earnings that will

ordinarily show engagement in substantial gainful activity include average monthly earnings of over $700 for the year 2001 and slightly more for 2002." *Martinez v. Commissioner of Social Security*, 132 Fed.Appx. 310, 2005 WL 1220643, *3 (11th Cir. 2005),[4] citing 20 C.F.R. § 404.1574(b)(2)(ii); *see* 20 C.F.R. § 416.974(b)(2)(ii) (same as § 404.1574(b)(2)(ii)).

The problem in this case is that the ALJ failed to identify and discuss in any meaningful manner the evidence that supports a conclusion that plaintiff's past work as a bagger rises to the level of substantial gainful activity, thereby constituting past relevant work. *See* 20 C.F.R. § 416.960. Based upon the evidence that is in the record, it is clear to the Court that plaintiff's earnings for all of 2001 totaled $4,872.07 (Tr. 79-80), which averages to much less than $700 per month. Because the ALJ wholly failed to discuss the relevant evidence in this case directed to this issue, as indicated, this Court must conclude, based upon average monthly wages of approximately $400 in 2001 (Tr. 79-80), that plaintiff's past work as a bagger did not rise to the level of substantial gainful activity. Therefore, it was reversible error for the ALJ to conclude that Clark's past work constitutes past relevant work to which she can return. 20 C.F.R. § 416.960. In other words,

_____

[4]    "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

since this work did not rise to the level of substantial gainful activity, it does not constitute past relevant work. *Id.* Therefore, on the record before this Court, the ALJ improperly ceased his analysis at the fourth step of the sequential evaluation process.

      **B.**    **Listing 12.05C**.    It is clear in this circuit that Clark must bear the burden of proving that she has an impairment which meets or is medically equivalent to a listed impairment. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) ("We hold that when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency."); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. . . . To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the

listed findings.'"). To establish presumptive disability under § 12.05C, a claimant must present evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. In addition, while plaintiff must "also satisfy the 'diagnostic description' of mental retardation in Listing 12.05[,]"[5] *Cooper v. Commissioner of Social Security*, 217 Fed.Appx. 450, 452, 2007 WL 543059, *1 (6th Cir. 2007), citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001), the law in this circuit is clear that where, as here, a claimant has presented a valid IQ score of 60 to 70, she is entitled to the presumption that she manifested deficits in adaptive functioning before the age of 22, *Hodges v. Barnhart*, 276 F.3d 1265, 1266 & 1268-1269 (11th Cir. 2001).[6]

The ALJ in this case makes no mention of Listing 12.05C. (*See* Tr. 20-27) Given this omission, all the undersigned can determine, at this point in

---

[5]    "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. "'Adaptive functioning' refers to a person's ability to perform activities of daily living and social functioning." *Fischer v. Barnhart*, 129 Fed.Appx. 297, 301-302, 2005 WL 352451, *4 (7th Cir. 2005) (citation omitted).

[6]    This presumption is rebuttable, the Commissioner being charged with the task of determining whether there is sufficient evidence (relating to plaintiff's daily life) to rebut the presumption. *Grant v. Astrue*, 255 Fed.Appx. 374, 375 (11th Cir. 2007).

time, is that plaintiff has produced evidence of a valid verbal, performance and full scale IQ of through 60 through 70 (*see* Tr. 140 ("On the WAIS-III, Mrs. Clark achieved a Verbal Scale IQ of 74 (4th percentile), a Performance Scale IQ of 64 (first percentile), and a Full Scale IQ of 67. The chances that the range of scores from 64 to 72 includes her true IQ are about 95 out of 100. Mrs. Clark's overall performance is classified in the mentally retarded range and is ranked at the first percentile. The results of this administration of the WAIS-III are considered valid.")),[7] as well as evidence of other physical and mental impairments which impose significant work-related limitations of function (*see* Tr. 22 ("**The claimant has the following severe impairment[s]: dysthymic disorder and personality disorder (20 CFR 416.920(c).**")). What this Court cannot determine is whether the evidence satisfies the diagnostic description of mental retardation since the ALJ did not engage in such analysis.[8] This was error which requires remand of this action to the

---

[7]    The Appeals Council's suggestion that a claimant has to be specifically diagnosed as mentally retarded (*see* Tr. 7) is contrary to the plain language of the listing. Listing 12.05C specifically requires only that a claimant have a valid IQ score from 60 to 70 which is admitted in this case (*see id.*). In addition, it appears to this Court that Dr. Tocci's failure to diagnose Clark with mild mental retardation was mere oversight. (*Compare* Tr. 140-141 (diagnoses) *with* Tr. 140 ("Mrs. Clark's overall performance is classified in the mentally retarded range and is ranked at the first percentile. The results of this administration of the WAIS-III are considered valid."))

[8]    This Court cannot engage in the analysis the defendant suggests in its brief (*see* Doc. 17, at 11-13); rather, this is exactly the type of analysis that must be performed by the ALJ

Commissioner of Social Security for further consideration.[9]

## **CONCLUSION**

The Court **ORDERS** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g),[10] *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.  The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239

---

on remand particularly since plaintiff's counsel argued at the hearing that "her condition meets or medically equals listing 12.05C[]" (Tr. 57). Plaintiff is entitled to the presumption outlined in *Hodges* and the burden falls to the Commissioner to either find plaintiff presumptively disabled or rebut the presumption.

[9]     Even if, on remand, the ALJ determines that plaintiff does not meet Listing 12.05C, at the very least he need find that plaintiff has the additional severe impairment of borderline intellectual functioning and factor that finding into his sequential evaluation analysis.

[10]     Although the plaintiff's application in this case is solely for supplemental security income benefits pursuant to 42 U.S.C. § 1383(c)(3), remand is proper under sentence four of § 405(g) because § 1383(c)(3) provides that "[t]he final decision of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

(1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 3rd day of April, 2009.

    s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**